### PAN AMERICAN HEALTH ORGANIZATION

v.

### MONTGOMERY COUNTY, MARYLAND, and the County Council for Montgomery County, sitting as the District Council for that Portion of the Maryland/Washington Regional District Located in Montgomery County.

Civ. A. No. DKC 93–3982.

United States District Court,
D. Maryland.

March 14, 1994.

John J. Delaney, Law Office, Washington, DC, Deborah Brand Baum, Shaw, Pittman, Potts & Trowbridge, Washington, DC, Michelle D. Bernard, Laxalt, Washington, Perito & Dubuc, Washington, DC, J. Thomas Lenhart, Shaw, Pittman, Potts and Trowbridge, Washington, DC, for Pan American Health Organization.

Edward Barry Lattner, Office of the County Atty., Rockville, MD, Angela K. Hart, Law Office, Rockville, MD, Joyce R. Stern, County Attys. Office, Rockville, MD, for Montgomery County, MD., County Council for Montgomery County.

James H. Hulme, Helen L. Gemmill, Christopher VanHollen, Jr., Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Chevy Chase Coordinating Committee.

## MEMORANDUM OPINION

CHASANOW, District Judge.

In a complaint filed December 3, 1993, Plaintiff, the Pan American Health Organization ("PAHO"), challenges the constitutionali-

ty and validity of Montgomery County Zoning Text Amendment No. 93014 ("the ZTA"), and seeks declaratory and injunctive relief, as well as damages and attorneys' fees. (Paper No. 1). The named Defendants are Montgomery County, Maryland, and the County Council for Montgomery County, sitting as the District Council ("Defendants" or "County"). PAHO moved for partial summary judgment on its claims for injunctive relief. (Paper no. 7). PAHO's three contentions are: (1) that the ZTA violates its rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Art. 24 of the Maryland Declaration of Rights; (2) that the ZTA constitutes an impermissible intrusion into federal authority to regulate foreign relations; and (3) that enactment of the ZTA exceeded the authority granted the County under state law. Defendants oppose Plaintiff's motion and filed their own motion to dismiss or, in the alternative, for summary judgment. The matter came on for hearing before the court on Friday, March 4, 1994.[1]

### BACKGROUND

The facts are undisputed. PAHO is a public international organization under the International Organizations Immunities Act ("I.O.I.A."), 22 U.S.C. §§ 288–288f (1988). PAHO's members are the United States, thirty-four independent countries of the western hemisphere and three European governments. The United States is a charter member and the host nation. PAHO's purpose is to coordinate and promote certain health related activities in the western hemisphere. It serves as the Regional Office of the World Health Organization and the Specialized Organization for Health of the Organization of American States. (Paper No. 7, ex. A, Declaration of Thomas M. Tracy, Chief of Administration). The current PAHO headquarters office building is located in Washington, D.C. on land originally purchased by the federal government. (Paper No. 7, ex. I, Public Law 86–395 (1960)).

In 1990, PAHO began to explore sites for a new headquarters building. At some point during the search process, PAHO, through its Chief of Administration, Thomas M. Tracy, wrote to Montgomery County Executive Neal Potter seeking "the County's concurrence that PAHO's proposed headquarters would be permitted in ... residential zones." (Paper No. 7, ex. C). The letter refers to the Montgomery County Code, 1984, as amended, § 59–C–1.31(d), which provided that any "publicly owned or publicly operated use" was permitted within all residential zones. As a result of that letter and other contacts, Montgomery County Attorney Joyce Stern wrote to the Director of the Department of Environmental Protection on March 5, 1993, and advised:

> After review of the legal issues involved, I have concluded that PAHO may develop its new building in Montgomery County without regard to zoning restrictions on use.

(Paper No. 7, ex. D). On March 12, 1993, the Maryland–National Capital Park and Planning Commission wrote to Mr. Tracy confirming that PAHO's headquarters "would be exempt from coverage of the Montgomery County Subdivision Regulations as a publicly owned and operated facility." (Paper No. 7, ex. E). Similarly, the Director of Environmental Protection wrote directly to Mr. Tracy indicating that the County Attorney had informed him that "PAHO may develop its new building in Montgomery County without regard to zoning restrictions on use." (Paper No. 7, ex. F). In August of 1993, PAHO entered into a purchase agreement for approximately 18.5 acres of residentially zoned land located at the southeast corner of the intersection of Connecticut Avenue and Jones

---

1. Two separate requests were submitted seeking to participate as *amici curiae*. The Secretary of the Maryland Department of Economic and Employment Development filed a request in mid-February accompanied by a memorandum. The County filed an opposition on February 23, 1994. (Paper No. 12). On March 2, 1994, local municipalities, taxing districts, citizens and citizen groups located near the site PAHO has selected filed a motion for leave as well. (Paper No. 14). The request is opposed by PAHO. (Paper No. 15). Many of these parties had been involved in an earlier case that was voluntarily dismissed. *Town of Chevy Chase, et al. v. Montgomery County, et al.*, Civil Action No. DKC 93–2125. The motions for leave to file memoranda as *amici curiae* are granted, although no participation at oral argument was allowed.

Bridge Road in Chevy Chase, Montgomery County, Maryland.

On September 21, 1993, three members of the County Council, sitting as District Council, introduced ZTA No. 93014 for the purpose of controlling the location and development of new, expanded or relocated facilities for Foreign Missions and International Organizations. For the first time, the terms "chancery," "embassy," "international organization" and "foreign missions" are defined. After a period of public comment, the ZTA was adopted on November 30, 1993.[2] It provided that chanceries, embassies, foreign missions, and international organizations are "not publicly owned or publicly operated use[s] for purposes of this chapter." Instead those uses are only permitted where specified, and an international organization is not a permitted use within residential zones. (Paper No. 7, ex. H). Understandably distressed by this turn of events, PAHO brought this action.

### ANALYSIS

PAHO contends that it is entitled to be treated in the same fashion as the federal, state and local governments in Maryland, which it defines as domestic public, governmental, or quasi-governmental entities, and should, therefore, be considered a "publicly owned or publicly operated use" permitted in all zones. For the reasons that follow, the court finds that PAHO's arguments are unavailing, despite the apparent unfair timing of the County's action.

1. *Regional District Act*

■ PAHO's last argument, that the enactment of the ZTA exceeds the authority granted the County under state law, should logically be addressed first. If the Montgomery County District Council lacks zoning authority over public international organizations, then the ZTA would be invalid regardless of any equal protection problems.

Pursuant to Md.Ann.Code art. 28, § 8–101, the County Council of Montgomery County has been designated as the District Council for that portion of the Maryland–Washington Regional District located in Montgomery County and has authority to regulate zoning. The Maryland–National Capital Park and Planning Commission [M–NCPPC] also plays a role in land use within the Maryland–Washington Regional District. Pursuant to Md.Ann.Code art. 28, § 7–112 (the "mandatory referral provision"), no "public (including federal) buildings or structures . . . shall be located, constructed or authorized . . . until and unless the proposed location, character, grade, and extent thereof has been submitted to and approved by the [M–NCPPC]." PAHO contends that it, as a public international organization, cannot be subjected to the Montgomery County Council's zoning authority, but rather it is only subject to M–NCPPC review under the mandatory referral provision.[3]

It is correct that Maryland cases hold that governments are not generally subject to a Maryland statute unless the statute makes explicit that it is meant to apply to them. PAHO, however, stretches that principle beyond its proper bounds. PAHO appears to assume that the phrase "a governmental agency" used in case law and Opinions of the Maryland Attorney General refers to all levels of government instead of just to the sovereign or the "State of Maryland."

The earliest Maryland case to discuss this issue is *State v. Milburn,* 9 Gill 105, 118 (Md.1850), in which the Maryland Court of Appeals found that the Maryland General Assembly did not intend to preclude the State from suing on a bond despite the fact

---

**2.** The ZTA as adopted is not identical to that originally proposed. Instead of treating chanceries and international organizations in a fashion similar to charitable organizations, as originally proposed, the District Council decided that chanceries and international organizations are primarily office uses and differ in significant respects from charitable organizations. The Montgomery County Planning Board report of October 3, 1993, was submitted by PAHO as an additional exhibit during the March 4, 1994, hearing.

**3.** Conspicuously absent from the memorandum submitted by the Maryland Department of Economic and Employment Development as *amicus* in support of PAHO's position is any contention that Maryland law prohibits the District Council from enacting legislation affecting PAHO.

238

that the bond was not stamped as required by a Maryland statute. The court referred to English law, observing that historically the prerogatives of the sovereign (the English king) were not affected by Acts of Parliament unless "there be express words to the effect." *Id.* at 117 (quoting *Chitty on Prerogative*, ch. 15). In that context, the Court of Appeals, concluding that "some of the royal prerogatives of England belong to the State," *id.*, quoted Justice Story:

> "'[G]eneral acts of the legislature are meant to regulate and direct the acts and rights of citizens, and in most cases, the reasoning applicable to them applies with very different, and often contrary force, to the government itself. It appears to me, therefore, to be a safe rule, founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the texts of the act.'"

*Id.* at 118.

■ Since then, *Milburn* has been cited for the proposition that the State of Maryland is not subject to local zoning authority because the state enabling act does not clearly and indisputably manifest such an intention.[4] *Baltimore v. State*, 281 Md. 217, 378 A.2d 1326, 1329 (1977). Similarly, the counties are "'mere instruments of government, appointed to aid in the administration of public affairs, and are parts of the State,' *Howard County v. Matthews*, 146 Md. 553, 561, 127 A. 118 (1924)," and are generally not covered by zoning ordinances. *Glascock v. Baltimore County*, 321 Md. 118, 581 A.2d 822, 824 (1990).

An Opinion of the Maryland Attorney General referred to by both parties, 74 Op. Att'y.Gen. 221 (1989), should not be read overbroadly. In that opinion, the generic references to government agencies relied on by PAHO were preceded by specific references to the state and its local governments, and there is no indication that even the United States or foreign governments were being considered:

> The evident purpose of § 3.08 [the mandatory referral provision] is to ensure that a local planning commission has an opportunity to evaluate the appropriateness of proposed facilities that may significantly affect the integrity of the master plan. The opportunity would not necessarily arise under the general provisions of Article 66B: Under Maryland law, State property used for public purposes is not subject to the controls and restrictions of local planning and zoning authorities, absent a specific grant of authority by the General Assembly. *Board of Child Care v. Harker*, No. 120 September Term, 1988, slip op. at 9, 12 and 14 (Md. July 28, 1989); *City of Baltimore v. State*, 281 Md. 217, 224, 378 A.2d 1326 (1977), *City of Baltimore v. State Dep't. of Health and Mental Hygiene*, 38 Md.App. 570, 578, 381 A.2d 1188 (1978). Neither are local governments' public facilities generally subject to planning and zoning control. 73 *Opinions of the Attorney General* 238, 243–45 (1988). *See also* 57 *Opinions of the Attorney General* 121, 125 (1972).

*Id.* at 226. The opinion continued that the scope of the mandatory referral provision "must be determined by reference to the uses that are generally exempt from planning and zoning controls." *Id.* The pieces fit together: the state enabling act does not expressly or indisputably authorize local authorities to place zoning restrictions on the state or local governments. Rather, only the less onerous M–NCPPC mandatory referral provisions apply to those public uses. PAHO is neither a state nor a local government and cannot claim an exemption from the Regional District Act and its delegation of zoning authority to the County on that basis.

The exemption of the federal government from state and local zoning laws stems, of course, from the Supremacy Clause. *United States v. Chester*, 144 F.2d 415, 419–20 (3d Cir.1944). As the *Chester* court succinctly stated:

> A state statute, a local enactment or regulation or a city ordinance, even if

---

4. In addition to Md.Ann.Code art. 28, § 8–101, zoning enabling acts include Md.Ann.Code art.

66B, § 3.01 *et seq.* The related mandatory referral provision is found in § 3.08.

based on the valid police powers of a state, must yield in case of direct conflict with the exercise by the government of the United States of any power it possesses under the Constitution. *Id.* at 420.

■ PAHO cannot claim for itself any part of the sovereignty of the United States. It, rather, is created by treaties to which the United States is a party. *Cf. International Refugee Organization v. Republic Steamship Corp.*, 189 F.2d 858, 861 (4th Cir.1951) (discussing jurisdiction of federal court over claim brought by agency of the United Nations). Federal law, it is true, gives PAHO the capacity to contract, to acquire and dispose of property, and to institute legal proceedings. I.O.I.A., 22 U.S.C. § 288a(a). It enjoys some of the status of a foreign government—but does not exercise sovereign power on behalf of the United States.

Thus, despite the early assurances from county and regional officials that PAHO would be treated as "public" for purposes of the then applicable zoning laws, PAHO is not, under Maryland law or the United States Constitution, beyond the reach of the local zoning authority. The County had the power to enact the ZTA.

### 2. *Equal Protection*

■ The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."[5] It is beyond question today that the definition of "person" extends beyond natural persons and those lawfully in the United States. *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 875, 105 S.Ct. 1676, 1679, 84 L.Ed.2d 751 (1985); *Plyler v. Doe,* 457 U.S. 202, 210–215, 102 S.Ct. 2382, 2391–93, 72 L.Ed.2d 786 (1982). Although the Supreme Court has concluded

that the word "person" in the Due Process Clause of the Fifth Amendment does not encompass states of the Union, *South Carolina v. Katzenbach,* 383 U.S. 301, 323, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966), it has recently declined to decide whether a foreign state is a person for similar purposes. Rather, the Court assumed for purposes of decision that a foreign state *is* a person under the Due Process Clause, and then concluded that the constitutional test was satisfied in *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 619, 112 S.Ct. 2160, 2169, 119 L.Ed.2d 394 (1992).

■ The argument for affording an international organization the status of a person is even stronger than that for recognizing foreign states as persons. PAHO, like all international organizations found within the United States, would not exist but for the United States' participation in the treaties and its recognition by the executive authorized by the I.O.I.A. Thus, it is appropriate for purposes of this case at least to assume, again without deciding, that PAHO is a person for purposes of the Fourteenth Amendment because even if it is, no denial of equal protection has occurred.

■ Under the equal protection clause, "all persons similarly circumstanced shall be treated alike." *Plyler, supra,* 457 U.S. at 216, 102 S.Ct. at 2394 (citations omitted). Legislation is presumptively valid and a statute will generally "be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citations omitted). Classifications based on race, alienage, or national origin, which are "seldom relevant to the achievement of any legitimate state interest," fail when subjected to strict scrutiny unless "they are suitably tailored to serve a compelling state interest."[6] *Id.*

---

**5.** Article 24 of the Maryland Declaration of Rights, while containing no express provision for equal protection, provides a parallel protection to that found in the Fourteenth Amendment. *Kirsch v. Prince George's County,* 331 Md. 89, 626 A.2d 372, *cert. denied,* — U.S. —, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993).

**6.** The United States is as much a part of PAHO as is any foreign state. PAHO's attempt to label the purported classification as based on alienage is, thus, illogical.

The first step in an equal protection analysis is to identify the classification being challenged. PAHO makes clear that it seeks to compare itself only to what it labels as domestic public organizations, and not to other classes in the zoning ordinance such as charitable or philanthropic institutions. This attempt to define its own class ignores both the constraints of the Constitution and the history of zoning authorizations in Maryland.

■ As discussed above, the United States Constitution and the Regional District Act compel the District Council for Montgomery County to treat state or federal public uses differently from all other uses with regard to zoning. The fact that the County ordinance allows federal or state publicly owned or publicly operated uses within residential zones is merely a result of the fact that the County is powerless to do otherwise.[7] Moreover, PAHO cannot claim equal status to the United States Government, which, by virtue of the Supremacy Clause, is not subject to regulation by any state for any purpose, zoning included. If the United States Government, speaking through its legislative and executive authority, wished to grant PAHO or any other international organization the benefit of its own supremacy, it could do so by invocation of the provisions of the Foreign Missions Act, 22 U.S.C. §§ 4301, et seq.[8] It has not done so here. Absent congressional or executive action beyond that currently present, neither PAHO nor any other public international organization may deem itself equal to the United States government itself.

PAHO also attempts to compare itself to local governments and argues that the County or certain municipalities are or could be subject to the zoning ordinance. The fact is, however, that local governments in Maryland derive their authority from the State, which, because it is the sovereign, ultimately controls the reach of zoning authority. As discussed previously, PAHO does not derive any authority from the State. Accordingly, PAHO's attempt to equate itself with any governmental entity in Maryland exercising a portion of the State's sovereignty is simply misplaced.

Thus, the zoning ordinance itself creates no true classification, and PAHO is not identical to the federal, state or local governmental agencies with which it wishes to be compared. Even if it could in some fashion be construed as being somewhat similar, any different treatment here does not defy rational explanation. Cf. Moss v. Clark, 886 F.2d 686, 691 (4th Cir.1989) (inmates incarcerated in District and federal facilities not "so similarly situated that different treatment defies rational explanation"). Whether the ZTA is viewed as dividing dissimilar groups into classes, or as making classifications related to a legitimate state interest, it passes constitutional muster.

### 3. Interference with the Conduct of Foreign Relations

■ PAHO's final argument is that the ZTA impermissibly intrudes into the federal government's exclusive authority over foreign relations. It is, again, beyond cavil that the exercise of foreign policy is within the exclusive domain of the federal government. See, e.g., United States v. Belmont, 301 U.S. 324, 331, 57 S.Ct. 758, 761, 81 L.Ed. 1134 (1937). PAHO acknowledges that there is a difference between permissible state legislation which only incidentally influences foreign affairs and impermissible state legislation that intrudes too far into the conduct of foreign relations. PAHO contends that the ZTA must be seen as an impermissible interference in foreign relations because, if upheld, the next ZTA could prohibit PAHO

---

7. Although not directly raised by the parties, it occurs to the undersigned that it may indeed be inappropriate for PAHO to contend that it has the right to be treated equally to the State of Maryland, a non-person for purposes of equal protection or to the United States, which is accorded supremacy. One would logically assume that the comparators for equal protection purposes ought all be "persons" subject to equal protection analysis.

8. Currently, the Foreign Missions Act sets specific parameters for zoning decisions affecting foreign missions in the District of Columbia, although it contains policy declarations generally applicable throughout the United States. Section 4309 authorizes the Secretary to make § 4306 [concerning zoning in the District of Columbia] or any other provision of the Chapter applicable with respect to an international organization, but that has not been done.

from building a headquarters office building anywhere in the county, regardless of the zoning.

 The impact of the ZTA involved in this case falls far short of the levels of interference in *Zschernig v. Miller*, 389 U.S. 429, 441, 88 S.Ct. 664, 671, 19 L.Ed.2d 683 (1968), or *Bethlehem Steel Corp. v. Board of Commissioners of the Department of Water and Power*, 80 Cal.Rptr. 800, 276 Cal.App.2d 221 (1969). As noted above, the Foreign Missions Act expresses the congressional expectation that, unless Congress acts specifically to preempt local zoning, there is no preemption of zoning or land use regulations. Indeed, the letter from the State Department dated August 20, 1993 (Paper No. 9, ex. A), implies that because matters of land use and zoning are to be determined by local law, they do not impermissibly intrude into the conduct of foreign relations. Should the federal government conclude otherwise based upon the current controversy, it is free to remedy the situation by legislation. In the meantime, however, this court cannot conclude that the ZTA by itself impermissibly intrudes into the conduct of foreign relations.

### CONCLUSION

For the foregoing reasons, the undersigned concludes that (1) the enabling legislation authorizing the District Council for Montgomery County to adopt regulations concerning zoning and land use authorizes the ZTA despite its impact on public international organizations; (2) even if international organizations are persons for purposes of the Equal Protection Clause, there has been no violation or denial of equal protection; and, finally, (3) the ZTA does not impermissibly intrude into the conduct of foreign relations. It follows that PAHO's motion for partial summary judgment will be denied and Defendants' motion for summary judgment will be granted.

A separate Order will be entered.