THE COMMONWEALTH OF PUERTO RICO, by the SECRETARY OF JUSTICE, Plaintiff,

v.

Donald H. RUMSFELD, Secretary of Defense, Hon. Gordon England, Secretary of the Navy, and Admiral Vern Clark, Chief of Naval Operations, Defendants.

No. CIV.A. 01–886(GK).

United States District Court, District of Columbia.

Jan. 2, 2002.

Eugene D. Gulland, Jarrett Austin Williams, Covington & Burling, Washington, DC, Anabelle Rodriguez–Rodriguez, Dept. of Justice, San Juan, PR, for plaintiff.

Angeline Purdy, U.S. Dept. of Justice, Washington, DC, for defendant.

Richard Blumenthal, Attorney General's Office, Hartford, CT, for movant.

### MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff, the Commonwealth of Puerto Rico ("Commonwealth"), brings this action to enjoin the United States Navy's military training operations on the Island of Vieques, a municipality of the Commonwealth. Defendants are Donald Rumsfeld, Secre-

tary of Defense; Gordon England, Secretary of the Navy; and Admiral Vern Clark, Chief of Naval Operations. Plaintiff alleges that Defendants' naval exercises violate the federal Noise Control Act of 1972 ("the Act"), 42 U.S.C. § 4901 *et seq.,* and Puerto Rico's local environmental noise control law, namely the Noise Prohibition Act of 2001.[1] The matter is now before the Court on Plaintiff's Motion for Summary Judgment, and Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.

Before turning to the particulars of the legal issues raised in this case, the Court notes some general observations about the underlying challenge. Without question, the issue of the Naval training exercises on Vieques has been of long-standing significance to many people. The Navy and the United States government view the exercises as critical to military readiness; the Commonwealth and the states that have submitted an *amicus curiae* brief believe the exercises interfere with their sovereign duty to protect the health, safety and welfare of their residents. The people of Vieques maintain that the exercises have significantly impaired their quality of life and well-being.

While the political and policy issues raised in this case are complex and involve the clash of many important interests, the legal issue, in contrast, is simple and straightforward. Upon consideration of the motions, oppositions, replies, the *amicus curiae* brief of the States of New York and Connecticut, and the entire record

herein, for the reasons stated below, the Court concludes that the Commonwealth's case must be dismissed for lack of subject matter jurisdiction. The federal Noise Control Act of 1972 does not provide Plaintiff a cause of action to sue in federal district court for the violations alleged. Accordingly, the Court **denies** Plaintiff's Motion for Summary Judgment and **grants** Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.

## I. BACKGROUND [2]

The Commonwealth filed this action to enjoin the United States Navy from firing its naval guns, known as 5–inch/54 caliber Mark 45 guns ("Mark 45 guns"), during naval training exercises at the inhabited island of Vieques. The Commonwealth asserts that these exercises violate both the federal Noise Control Act of 1972 and Puerto Rico's own Noise Prohibition Act of 2001.

### A. Naval Exercises on Vieques

Vieques, a municipality of the Commonwealth of Puerto Rico, is a hilly island in the Caribbean located to the south and east of Puerto Rico. Vieques is over 18 miles long and four miles at its widest point. About 9,300 civilians reside in Vieques, most of them in the two towns in the middle of the island, Isabel Segunda on the north coast and Esperanza on the south coast.

The Navy has been conducting military training exercises on and in the waters

---

1. The Noise Prohibition Act of 2001 has not yet been codified as law in Puerto Rico. However, for purposes of this Opinion, the Court relies on the English translation thereof submitted by both parties as attachments to their motions. There is no dispute as to this translation. *See* Pl.'s Memorandum of Law in Support of its Motion for Summary Judgment ("Pl.'s Memo.") at Ex. 1; *see* Defendants'

Memorandum of Law in Support of its Motion to Dismiss, or in the Alternative, for Summary Judgment ("Defs.' Memo."), Statutory Addendum.

2. The facts cited herein are either undisputed or explicitly identified as the allegations of one of the parties.

surrounding Vieques for the past 60 years. Currently, the Navy owns approximately 14,000 of the island's 33,000 acres, which includes most of the eastern end of the island. The Navy's installations on the eastern end of Vieques are part of a larger military complex known as the Atlantic Fleet Weapons Training Facility, headquartered in Puerto Rico. That facility consists of four firing ranges. The one most relevant to Plaintiff's challenge is the "Inner Range." [3]

Many different kinds of training exercises occur in the Inner Range.[4] Plaintiff's allegations challenge the continuation of the exercises known as Naval Surface Fire Support exercises ("NSFS"). These exercises involve ship-to-shore gunnery practice by Navy vessels stationed between 4.6 to 6.8 miles from the southern shore of Vieques. The vessels fire 70–pound projectiles at 2.3 times the speed of sound at targets on an uninhabited area on the eastern end of Vieques known as the "Live Impact Area." Each individual firing generates three sounds, namely one muzzle blast and two intense sonic booms. These sounds are propagated through air and water toward the island of Vieques, and each sound exceeds peak sound pressure values of 190 dB re 1 ¢–Pa.[5]

## B. Effects of Naval Firing

Every year the Navy fires thousands of rounds from its Mark 45 guns at the Live Impact Area on the eastern part of Vieques as part of its NSFS exercises.[6] The firing generates high amplitude, low frequency sounds that the Commonwealth asserts have caused a wide range of medical problems and have substantially impaired the quality of life for residents of Vieques.

For example, the Commonwealth asserts that the noise generated from the naval firing has led to a high incidence of Vibroacoustic disease. This disease refers to injuries and abnormalities in the cardiovascular, respiratory, nervous and immune systems due to prolonged exposure to high-amplitude, low-frequency noise.[7] *See* Pl.'s Compl. at ¶ 20.

Plaintiff also alleges that the noise associated with the naval exercises substantially interferes with the quality of life of the civilian residents of Vieques by causing significant discomfort, annoyance, and psychological distress.[8] *See* Pl.'s Memo. at 8–

---

**3.** The other three ranges are the: (1) outer range, which is an ocean range more than 35 miles off the coast of Vieques, where the Navy conducts ship-to-ship weapons fire, ship-to-air missile fire and air-to-air missile fire; (2) the underwater range, located off the western shore of St. Croix, involving three dimensional tracking of surface and underwater objects; and (3) the electronic warfare range. *See* Defs.' Memo. at 5, n.2.

**4.** Other training exercises include air-to-ground bombing operations; combined arms training involving the maneuvering of forces and the use of small arms, mortars, artillery and other explosives; close air support operations; amphibious operations; special warfare operations; and practice aerial and surface mining operations. *See* Pl.'s Compl. at ¶ 14.

**5.** "190 dB re 1 ¢–Pa" is a sound measurement in decibels referenced to one micro Pascal. A micro Pascal is a pressure measurement unit.

**6.** For example, in 1988, the Navy fired over 13,000 rounds at Vieques. In 1998, approximately 7,300 shells were fired at Vieques.

**7.** Defendants maintain that the exercises have not caused Vibroacoustic disease or any other illness commonly associated with exposure to high amplitude, low frequency sounds. *See* Def.'s Memo at 9–10. They further contend that the naval exercises do not impair the health of residents on Vieques and that the maximum sound values set by the Noise Prohibition Act are well below safety criteria. *See* Defs.' Reply at 2–5.

**8.** Defendants dispute that the noise levels significantly impair the quality of life of resi-

10 ("noise from the ship-to-shore bombardments...irritate and produce 'fear, anxiety and tension' among the island's residents...the impact of the noise is especially traumatic for schoolchildren in Vieques....[There is a] constant sense of anxiety among [ ] students").

Plaintiff further alleges that the naval firing produces long-term damage to the homes and livelihood of residents on Vieques.[9] *See* Pl.'s Memo. at 10 ("Houses in Vieques vibrate...to such a degree that noise-induced cracking and leaking are commonplace."); *id.* at 11 ("The intense noise not only produces stress and anxiety in the fishermen, it also harms the aquatic life on which the fishermen depend for their livelihood.").

### C. Federal Noise Control Act

The Commonwealth brings its challenge to the naval exercises under the federal Noise Control Act. The Noise Control Act is a federal statute aimed at addressing the adverse physical and psychological effects of inadequately controlled noise on the overall health of citizens. 42 U.S.C. § 4901(b) ("It is the policy of the United States to promote an environment for all Americans free from noise that jeopardizes their health or welfare."). The Noise Control Act contemplates both federal and state regulation of noise pollution in furtherance of this goal.

Specifically, the Act recognizes that "federal action is essential to deal with major noise sources in commerce," and establishes, *inter alia,* "federal noise emis-sion standards for certain products distributed in commerce." 42 U.S.C. § 4901(a)(3). In particular, the Act directs the Environmental Protection Agency ("EPA") to promulgate regulations establishing noise emission standards applicable to manufacturers who design products found to be major sources of noise pollution, such as construction and transportation equipment. 42 U.S.C. § 4905.

The Noise Control Act also acknowledges the role that state and local governments play in noise pollution control, and provides that the "primary responsibility for control of noise rests with state and local governments." 42 U.S.C. § 4901(a)(3). It leaves to the states and cities the responsibility for regulating environmental noise stemming from the use of the products found to be major sources of noise pollution. 42 U.S.C. § 4905(e)(2)("nothing in this section precludes or denies the right of any State or political subdivision thereof to establish and enforce controls on environmental noise (or one or more sources thereof) through the licensing, regulation or restriction of the use, operation, or movement of any product or combination or products."); *see also* S.Rep. No. 92–1160, at 7 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4655, 4660 ("states and local governments have the primary responsibility...for setting and enforcing limits on environmental noise which in their view are necessary to protect public health and welfare.").

The provision of the Noise Control Act upon which Plaintiff relies is contained in

---

dents on Vieques. They emphasize that residents are exposed to short pulses of noise from naval gunfire that add up to slightly over four minutes of noise spread over the course of a year. They have submitted expert testimony indicating that the noise levels in the residential areas of Vieques are "unexceptional with respect to the outdoor noise exposure of large segments of the [United States] population." Defs.' Memo. at 9; *see also* Defs.' Reply at 4–5.

9. Defendants also dispute that the naval exercises threaten the fish and marine life in the waters around Vieques and Puerto Rico. *See* Defs.' Reply at 4, n.7.

Section 4(b). Also referred to informally as the "federal facility provision," it provides that "[e]ach department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government...shall comply with established federal, state, interstate and local laws respecting control and abatement of environmental noise," [10] subject only to presidential exemption. 42 U.S.C. § 4903.

### D. Puerto Rico's Noise Prohibition Act of 2001

The Commonwealth also alleges violation of its local law, namely the Noise Prohibition Act, which the Governor of Puerto Rico signed into law on April 23, 2001. The Noise Prohibition Act prohibits the generation of sound above peak sound pressure levels of 190 dB re 1 ¢ from anywhere within the waters of Puerto Rico. Specifically, it provides that:

> No person may cause or permit the emission of a sound either in air or in water which, at any time, for any duration, and at any frequency or range of frequencies, propagates into the Waters of Puerto Rico...a peak sound pressure level or equal to or in excess of 190 dB re 1 ¢–Pa, as measured at any point within said Waters of Puerto Rico.

Article VI, Section 2. *See* Pl.'s Memo., Ex. 1.

### E. The Commonwealth's Suit

Immediately after passage of the Act, and on April 24, 2001, the Commonwealth filed a complaint and a motion for temporary restraining order to enjoin the Navy from firing Mark 45 naval guns as part of its 4–7 day training exercises scheduled to begin on April 24, 2001. The Court denied the Motion for a Temporary Restraining Order on April 26, 2001.

Thereafter, Plaintiff filed a Motion for Summary Judgment seeking: (1) a judgment declaring that the Navy's firing of Mark 45 guns at targets located on Vieques violates the federal Noise Control Act of 1972 and the Commonwealth's Noise Prohibition Act of 2001; and (2) an injunction prohibiting any further firing of Mark 45 guns at targets located on Vieques. Defendants filed a Motion to Dismiss in response.

## II. STANDARD OF REVIEW

Before the Court are Plaintiff's Motion for Summary Judgment and Defendants' Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment. The Federal Rules of Civil Procedure require that if, on a motion to dismiss for failure to state a claim, the movants submit matters outside the pleadings which are not excluded by the court, the motion must be treated as one for summary judgment and disposed of in accordance with Rule 56. Fed. R.Civ.P. 12(b). Defendants' Motion requires consideration of matters outside the pleadings and will thus be treated as a Motion for Summary Judgment.

Summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. ANALYSIS

The heart of Plaintiff's complaint is that the Navy has violated the federal Noise

---

**10.** For purposes of this opinion and for the convenience of the reader, "state...and local laws respecting control and abatement of environmental noise" will also be referred to as "state and local environmental noise requirements." This terminology is consistent with the legislative history. *See* S.Rep. No. 92–1160, at 6, 1972 U.S.C.C.A.N. at 4658 ("the concept of 'environmental noise' is used through [sic] this bill to describe the overall level of noise in a given area to which individuals are exposed...").

Control Act of 1972 by its ship-to-shore firing of Mark 45 guns at Vieques. Specifically, the Commonwealth maintains that the federal Noise Control Act requires the Navy to comply with its local Noise Prohibition Act. The Noise Prohibition Act prohibits peak sound pressure levels in and around the waters of Puerto Rico that exceed 190 dB re 1 ¢–Pa.

■ Defendants do not dispute that the naval exercises violate Puerto Rico's local law or that the firing propagates sound that exceeds the prescribed noise levels. *See* Defs.' Memo. at 9. Instead, Defendants assert that Plaintiff may not sue under the federal Noise Control Act to enforce the Navy's compliance with the local Noise Prohibition Act. Defendants argue that the federal Noise Control Act contains neither an express waiver of sovereign immunity nor a cause of action for enforcement of state or local environmental noise laws.[11]

As explained below, even if the Noise Control Act waives sovereign immunity, the Court would still lack subject matter jurisdiction over Plaintiff's action. The Noise Control Act does not provide the Commonwealth of Puerto Rico with a private right of action to sue in federal district court for the Navy's failure to comply with the peak sound pressure limits established by the Noise Prohibition Act.

## A. There is No Express Cause of Action Under the Federal Noise Control Act

■ The federal Noise Control Act does not expressly authorize Plaintiff's suit to enforce the type of environmental noise requirement at issue here, namely the peak sound pressure levels established by Puerto Rico's local Noise Prohibition Act.

First, it is clear that Section 4(b) of the Noise Control Act, the provision upon which Plaintiff relies, does not expressly authorize this suit. Section 4(b) provides that "[e]ach department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government...*shall comply with established Federal, State, interstate and local laws respecting control and abatement of environmental noise,*" subject only to presidential exemption. 42 U.S.C. § 4903 (emphasis added).[12] Although this language requires federal facilities to follow federal, state and local environmental noise laws, it does not provide a private right of action to enforce these requirements in federal district court. Plaintiff does not dispute the absence of an express cause of action to enforce Section 4(b). *See* Pl.'s Memo. at 26 ("The absence of an express right of action in the Noise Control Act to enforce Section 4(b) does not preclude the Court from finding that there should be an implied right.").

---

11. In any suit in federal district court in which the Defendant is the United States, there must be both a waiver of sovereign immunity and subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 484, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The two inquiries are "analytically distinct" ones. That is, even if there is a waiver of sovereign immunity, a Court must still find that the source of substantive law upon which Plaintiff relies provides an avenue for relief. *Meyer*, 510 U.S. at 484, 114 S.Ct. 996.

12. The relevant part of section 4(b) provides:
 Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government—
 (1) having jurisdiction over any property or facility, or
 (2) engaged in any activity resulting, or which may result, in the emission of noise, shall comply with Federal, State, interstate, and local requirements respecting control and abatement of environmental noise to the same extent that any person is subject to such requirements.
 42 U.S.C. § 4903.

Second, it is also clear that the "citizen suit" provision of the Noise Control Act does not expressly authorize Plaintiff's suit. The citizen suit provision is contained in Section 12 of the Act and explicitly sets forth the type of environmental noise requirements that may be enforced under the Act in federal district court. *See* 42 U.S.C. § 4911.

Specifically, Section 12 provides that "any person...may commence a civil action on his [sic] own behalf...(1) against any person (including [the United States]) who is alleged to be in violation of any noise control requirement." The term "noise control requirement," in turn, is defined by reference to other sections of the Act. Those sections all concern certain types of *federal* noise control requirements, such as federal noise emission standards for manufacturers of new products in interstate commerce.[13]

Plaintiff does not appear to dispute that Section 12 does not authorize suit in federal court for violation of state and local requirements "respecting control and abatement of environmental noise." *See* Pl.'s Memo. at 27; *see Romero–Barcelo v. Brown*, 643 F.2d 835, 853 (1st Cir.1981)(in case challenging the naval firing at Vieques and involving nearly identical facts as the one at bar, the First Circuit concluded that "Section 12 has no provision for citizens' suits to enforce a federal agency's duty to comply with state and local requirements regarding the control and abatement of environmental noise. Puerto Rico's claim, premised on a violation of

state law, cannot be maintained under s 12 of the Act."). Consequently, the only noise control requirements enforceable under Section 12 are the enumerated *federal* ones.

Third, parties have pointed to no other language or provision in the federal Noise Control Act providing the Commonwealth a cause of action to enforce its local environmental noise requirement. Upon independent examination of the statute, the Court can find no such language.

It is therefore clear that the *federal* Noise Control Act does not expressly provide a private right of action for the enforcement of the Noise Prohibition Act or of any other local requirement "respecting control and abatement of environmental noise."

### B. There is No Implied Right of Action Under the Federal Noise Control Act

Given the absence of an express private right of action for suit under the federal Noise Control Act, the question remains whether one may be implied.

The Commonwealth argues that a private right of action should be implied. It reasons that since Section 4(b) requires federal facilities to comply with state and local environmental noise laws, *a fortiori*, a state or locality may enforce that duty in federal district court. *See* Pl.'s Opp'n at 26 ("In the absence of an express provision for relief, it is therefore presumed that Congress intended an implied right of ac-

---

**13.** Specifically, the term "noise control requirement" is defined in subsection (f) by reference to other sections of the Act: "For purposes of this section, the term 'noise control requirement' means paragraph (1), (2),(3), (4), or (5) of section 4909(a) of this title..." Paragraphs 1–5 of § 4909(a), in turn, concern federal regulations aimed at the manufacturing of products put in interstate com-

merce that are determined to be "major sources of noise." S.Rep. No. 92–1160, at 16, 1972 U.S.C.C.A.N. at 4666. These include noise emission standards for the manufacturing and design of "construction equipment, transportation equipment, any motor or engine, turbines and compressors, percussion and explosive equipment, and electrical and electronic equipment." *Id.*

tion to be available to enforce such a statutory command.").

### 1. Implied Right of Action Doctrine

■ It is well established that "like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 1519, 149 L.Ed.2d 517 (2001). It is not surprising then, that the implied right of action cases make clear that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *see also Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (remedies available are those "that Congress enacted into law").

■ To determine whether Congress intended to create a private right of action under a federal statute without saying so expressly, the key inquiry is, of course, the intent of the legislature. *See Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 12, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *see also Sandoval,* 121 S.Ct. at 1519–1522. Furthermore, there must be an "intent to create not just a private right but also a private remedy." *See Transamerica Mortgage Advisors,* 444 U.S. at 19, 100 S.Ct. 242.

To determine intent, a court examines the statutory language, particularly the provisions included for enforcement or relief, as well as the legislative history and other traditional aids to statutory interpretation. *Sea Clammers,* 453 U.S. at 12, 101 S.Ct. 2615; *Sandoval,* 121 S.Ct. at 1520. After doing so, "in the absence of strong indicia of a contrary congressional intent," a court is "compelled to conclude that Congress provided precisely the remedies it

considered appropriate" in a statute. *Sea Clammers* 453 U.S. at 15, 101 S.Ct. 2615.

As explained below, examination of the statutory language, context and history of various sections of the federal Noise Control Act does not reveal any indicia, let alone "strong indicia," that Congress intended to create a private cause of action for plaintiff to sue in federal district court for violation by federal facilities of state and local environmental noise laws. To the contrary, examination of the statutory language and context shows that Congress only intended to create a cause of action under the Noise Control Act for violations of the federal environmental noise control requirements expressly set forth in Section 12, the citizen suit provision.

### 2. Federal Facility Provision of the Federal Noise Control Act

The Court first examines the statutory language, context, and legislative history of Section 4(b), the provision upon which Plaintiff relies, to determine whether Congress intended to create a private right of action.

Plaintiff argues that the language of Section 4(b), which provides, *inter alia,* that federal facilities "shall comply with Federal, State, interstate and local requirements respecting control and abatement of environmental noise," 42 U.S.C. § 4903(b), provides a sufficient basis upon which to imply a right of action because it requires federal facilities to follow state and local laws.

■ First, the Supreme Court has recognized that even though federal facilities may be required by federal statute to follow state and local environmental laws, states may not be able to enforce those laws against federal facilities. In *Hancock v. Train,* 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976), the Court concluded

that the federal facility provision of the Clean Air Act, 42 U.S.C. § 7418(a), (which served as the model for Section 4(b) of the Noise Control Act) [14] clearly required federal installations to "comply with established air pollution control and abatement measures." *Id.* at 172, 96 S.Ct. 2006. The Court held, however, that even though federal installations were obligated to conform to state requirements, states could not enforce such compliance through, *inter alia,* state permit procedures. *Id.* at 198, 96 S.Ct. 2006 ("[W]e can only conclude that to the extent it considered the matter in enacting [the federal facility provision] Congress has fashioned a compromise which, while requiring federal installations to abate their pollution to the same extent as any other air contaminant source and under standards which the States have prescribed, stopped short of subjecting federal installations to state control.").

Therefore, it is not axiomatic, as Plaintiff maintains, that Plaintiff may automatically enforce the Navy's compliance with the Noise Prohibition Act in federal district court simply because Section 4(b) requires federal facilities to comply with state and local environmental noise laws.

Second, nowhere in the remainder of Section 4(b) is there any language permitting commencement of a civil action to enforce state and local environmental noise requirements. Nor does Section 4(b) contain language permitting any other means of enforcement. This omission is significant, in light of the fact that Congress has provided explicit enforcement language in the federal facility provisions of other environmental statutes considered analogous to the Noise Control Act. For example, the federal facility provisions of both the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.,* and the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.,* expressly contemplate enforcement in federal court of certain types of state and local requirements.[15]

---

**14.** The legislative history establishes that the Clean Air Act, including its federal facility provision, served as a prototype for the Noise Control Act. *See* S.Rep. No. 92–1160, at 8, 1972 U.S.C.C.A.N. at 4661. Furthermore, at least one Circuit court has interpreted the Noise Control Act by analogizing to judicial interpretations of the Clean Air Act. *See Romero–Barcelo,* 643 F.2d at 854–855.

**15.** The federal facility provision of the Clean Air Act provides:

> Each [federal facility] shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution in the same manner, and to the same extent as any non-governmental entity...*The preceding sentence shall apply...(D) to any process and sanction, whether enforced in Federal, State or local courts or in any other manner. The subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.* No

officer, agent, or employee of the United States shall be personally liable for any civil penalty for which he is not otherwise liable. 42 U.S.C. § 7418(a) (emphasis added). The legislative history of the Noise Control Act reveals that the CAA served as a model for the Act. *See* S.Rep. No. 92–1160, at 6, 1972 U.S.C.C.A.N. at 4658.

Similarly, the federal facility provision of the Clean Water Act, 33 U.S.C. § 1323(a), contains language—not found in Section 4(b) of the Noise Control Act—that clearly contemplates enforcement of state requirements in federal court:

> Each [federal facility]... shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply ...(C) *to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner.* This subsection shall apply notwithstanding any

Third, the statutory context of Section 4(b) is instructive and further indicates that there is no implied cause of action. Significantly, the language on which Plaintiff relies is not contained in a section concerning "relief," "remedy" or "enforcement" of rights under the statute, as is normally the case where Congress intends to create a private right of action. *Sea Clammers*, 453 U.S. at 12, 101 S.Ct. 2615.

Instead, the language on which Plaintiff relies is contained in the section entitled "Federal Programs," and in the subsection entitled "Presidential authority to exempt activities or facilities from compliance requirements." The remainder of Section 4(b) is devoted to the presidential authority to exempt facilities from compliance.[16] The particular statutory context of Section 4(b) shows that it is the federal executive branch, and not the states, that is charged with enforcing the federal duty to comply with state and local "requirements respecting control and abatement of environmental noise." Indeed, the Supreme Court has concluded that "what is implied by the very grant of [Presidential] authority to exempt some federal sources [from compliance]" is that "in the first instance...fed-

eral compliance...rests in the Federal Government, not in the States." *Hancock*, 426 U.S. at 190 n. 54, 96 S.Ct. 2006. It is therefore not the case, as Plaintiff maintains, that the federal duty to comply with state and local environmental noise requirements is rendered meaningless absent an implied right of action permitting states to enforce compliance with those laws. *See* Pl.'s Opp'n at 26–29.

Fourth and finally, it is clear upon examination of the relationship of Section 4(b) to the statute as a whole that a primary purpose of its language is to distinguish the areas of noise control that are federally preempted from those areas that are left to state control. Specifically, Section 4(b) makes clear that local "requirements concerning control and abatement of environmental noise" are not federally preempted by the Noise Control Act.

Indeed, as noted earlier, the federal Noise Control Act contemplates both federal and local responsibility for controlling noise pollution. To that end, the Act preempts some areas of noise pollution control, namely the area of noise emission

---

immunity of such agencies, officers, agents, or employees under any law or rule of law. *Nothing in this section shall be construed to prevent any department, agency, or instrumentality of the Federal Government,...from removing to the appropriate Federal district court any proceeding to which the department, agency, or instrumentality or officer, agent, or employee thereof is subject pursuant to this section.*

33 U.S.C. § 1323(a) (emphasis added).

**16.** The remaining section of Section 4(b) provides that:

The President may exempt any single activity or facility, including noise emission sources or classes thereof, of any department, agency, or instrumentality in the executive branch from compliance with any such requirement if he determines it to be in the paramount interest of the United

States to do so; except that no exemption, other than for those products referred to in section 4902(3)(B) of this title, may be granted from the requirements of sections 4905, 4916, and 4917 of this title. No such exemption shall be granted due to lack of appropriation unless the President shall have specifically requested such appropriation as a part of the budgetary process and the Congress shall have failed to make available such requested appropriation. Any exemption shall be for a period not in excess of one year, but additional exemptions may be granted for periods of not to exceed one year upon the President's making a new determination. The President shall report each January to the Congress all exemptions from the requirements of this section granted during the preceding calendar year, together with his reason for granting such exemption.

42 U.S.C. § 4903(b).

standards imposed on the *manufacturing* of new products. However, it leaves other areas of noise control for state and local regulation, namely those concerning environmental noise stemming from the *use* of those products. *See* 42 U.S.C. § 4905(e). The Senate Report explains this division of responsibilities fully:

> It is the intention of the Committee to distinguish between burdens which fall on the manufacturers of products in interstate commerce and burdens which may be imposed on the users of such products....Noise emission standards for products which must be met by manufacturers...should be uniform. On the other hand, states and local governments have the responsibility ... for setting and enforcing limits on environmental noise which in their view are necessary to protect public health and welfare. This essentially local responsibility is not assumed or interfered with by this bill...
>
> * * * * * *
>
> Authority to establish noise emission standards enforceable against the manufacturer for any product manufactured after the effective date of an applicable federal standard is preempted, while states and cities retain the authority to establish and enforce limits on environmental noise through licensing, regulation, or restriction of the use, operation or movement of any product or combination of products.

S.Rep. No. 92–1160, at 7–8, 1972 U.S.C.C.A.N. at 4660. Rather than evince Congressional intent to create a private right of action to enforce federal compliance with state or local environment noise requirements, the language of Section 4(b) requiring federal facilities to follow "local requirements respecting control and abate-

ment of environmental noise to the same extent that any person is subject to such requirements" merely reinforces the conclusion that this area of responsibility has not been federally preempted.

In sum, upon examination of the statutory language, context and history of Section 4(b), the Court finds no indicia of Congressional intent that would justify implying a cause of action for federal violations of state and local "requirements respecting control and abatement of environmental noise."

### 3. Other Sections of the Federal Noise Control Act

The Court next examines whether Congressional intent to provide Plaintiffs a cause of action may be gleaned from other sections of the federal Noise Control Act.

### a. Citizen Suit Provision

 The *federal Noise Control Act* contains a "citizen suit provision," which, as noted earlier, expressly limits civil actions in federal district court to violations of certain types of *federal* environmental noise requirements. It does not permit suit *for* violations of state or local environmental noise requirements.

In fact, Section 12 does not even mention the environmental noise control requirements of Section 4(b) or contain any language that could be construed to permit enforcement of the environmental noise control requirements referred to in Section 4(b). If Congress intended the requirements set forth in Section 4(b) to be enforceable in federal district court, it would have, at the very least, referenced the federal facility provision requirements in the citizen suit provision, as it has expressly done in other analogous statutes.[17] *See*

---

**17.** A comparison of the relationship between the citizen suit and federal facility provisions

*also Romero–Barcelo,* 643 F.2d at 855 ("the federal requirements enforceable under section 12 [of the Noise Control Act] are the best evidence of the type of noise control requirement that Congress intended to be enforceable by suit against a federal agency.").

### b. Enforcement Provision

█ Finally, a review of the "Enforcement" section of the federal Noise Control Act strengthens the conclusion that Congress did not intend to create a private right of action for violations by a federal entity of the state and local environmental noise requirements of Section 4(b). 42 U.S.C. § 4910. The Enforcement section permits criminal and civil penalties for violations of 42 U.S.C. § 4909 only ("Prohibited Acts section"). The Prohibited Acts section, in turn, identifies certain *federal* noise emission, design, and labeling standards applicable to manufacturers that are introducing products into commerce. The Act also permits suit in federal district court by the federal government for viola- tions of federal emission standards.[18] Nowhere in the Enforcement section is there any indication that other types of requirements, including state or local environmental noise requirements, are enforceable in federal district court.

In summary, then, upon examination of the statutory language, context and history of Section 4(b) and of other provisions of the federal Noise Control Act, the Court finds no indication that Congress intended to create a private right of action for violations by federal facilities of state and local "requirements respecting control and abatement of environmental noise." In the absence of a cause of action, express or implied, Plaintiff cannot bring its challenge under the federal Noise Control Act. Because the Noise Control Act provides the sole basis for federal jurisdiction, the case must be dismissed for lack of subject matter jurisdiction.[19]

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment is **denied**

of the Noise Control Act with the parallel provisions in the Clean Air Act is particularly instructive. Unlike the citizen suit provision of the Noise Control Act, the citizen suit provision of the Clean Air Act expressly references and makes enforceable the state requirements set forth in its federal facility provision.

Specifically, the citizen suit provision of the CAA provides that: "any person may commence a civil action on his [sic] own behalf against any person...who is alleged to be in violation of (A) an emission standard or limitation under this Chapter." 42 U.S.C. § 7604(a)(1). An "emission standard or limitation," is in turn, defined as "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard...which is in effect under this Chapter *(including a requirement applicable by reason of section 7418* []) ..." 42 U.S.C. § 7604(f)(1)(emphasis added). Section 7418 is the federal facility provision of the CAA and clearly requires federal compliance with state and local laws "respecting the control and abatement of air pollution."

**18.** Specifically, subsection (a) provides that "any person who willfully or knowingly violates...section 4909 ... shall be punished by a fine of not more than $25,000 per day." Subsection (c) provides that "the district courts of the United States shall have jurisdiction of actions brought by and in the name of the United States to restrain any violations of section 4909(a) of this title." 42 U.S.C. § 4909.

**19.** In its complaint, Plaintiff also alleged federal jurisdiction under 28 U.S.C. § 1361 (mandamus jurisdiction), which provides that federal "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus jurisdiction, however, cannot serve as an independent basis for jurisdiction. *See Starbuck v. City and County of San Francisco,* 556 F.2d 450 (9th Cir.1977).

and Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment is **granted.** An Order will issue with this Opinion.

### *ORDER*

Plaintiff, the Commonwealth of Puerto Rico ("Commonwealth"), brings this action to enjoin the United States Navy's military training operations on the Island of Vieques, a municipality of the Commonwealth. Defendants are Donald Rumsfeld, Secretary of Defense; Gordon England, Secretary of the Navy; and Admiral Vern Clark, Chief of Naval Operations. Plaintiff alleges that Defendants' naval exercises violate the federal Noise Control Act of 1972, 42 U.S.C. § 4901 *et seq.* and Puerto Rico's local environmental noise control law, namely the Noise Prohibition Act of 2001.[1]

The matter is now before the Court on Plaintiff's motion for summary judgment, and Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. Upon consideration of the motions, oppositions, replies, the *amicus curiae* brief of the States of New York and Connecticut, and the entire record herein, for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED,** that Plaintiff's Motion for Summary Judgment [# 33] is **denied;** it is further

**ORDERED,** that Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment [# 37] is **granted;** it is further

**ORDERED,** that this case is **dismissed** for lack of subject matter jurisdiction because the federal Noise Control Act of 1972 does not provide Plaintiff with a cause of action.

---

1. The Noise Prohibition Act of 2001 has not yet been codified as law in Puerto Rico. For purposes of the accompanying Memorandum Opinion, the Court relied upon an English translation thereof submitted by the parties to which there was no dispute.