The CITY OF LOS ANGELES, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 71–1–FW.

United States District Court, C. D. California.

Dec. 15, 1972.

Roger Arnebergh, City Atty., Walter C. Foster, Deputy City Atty., San Pedro, Cal., for plaintiff.

William D. Keller, U. S. Atty., Clarke A. Knicely, Asst. U. S. Atty., Los Angeles, Cal., William E. Gwatkin, III, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WHELAN, District Judge.

In this action both plaintiff and defendant have filed motions for summary judgment. The motions came on for hearing and after argument both oral and written was presented to the Court by counsel for the parties the motions were submitted for decision.

This is an action wherein plaintiff City of Los Angeles sues for declaratory judgment and damages against the United States. The basis of plaintiff's claim is that defendant owes plaintiff's municipal pilotage fees upon the entry into, shifting within and departure from plaintiff's Los Angeles Harbor of those vessels listed in the schedule attached to plaintiff's complaint; plaintiff claims that the amounts due for each of such vessels is set forth in such schedule and that the arrival dates of such vessels in Los Angeles Harbor are also set forth in such schedule. The Court has heretofore dismissed the action as to any part of plaintiff's claim that pre-dates December 31, 1968, on the ground that recovery on such prior claim is barred by the Statute of Limitations. The vessels in question are vessels owned by defendant United States of America and thus public vessels of the United States. All of such vessels were operated by the

former Military Sea Transportation Service of the United States Navy; such Service during the times here involved provided ocean transportation service for the movement of personnel, cargo, bulk petroleum and mail for all components of the Department of Defense (excluding that transported by units of the fleet) and as authorized for other agencies of the United States Government subject to the policy of the Secretary of Defense. The primary mission of such Service is to provide immediate sea lift capability in an emergency. Such vessels are designated United States Naval ships and the Service fleet is comprised of transports, tankers, freighters and special project ships which are all civilian manned. The Commander of the Military Sea Transportation Service is a fleet officer designated by the Chief of Naval Operations and he is under the command of the Chief of Naval Operations.

All of the vessels listed in the schedule attached to plaintiff's complaint other than two are United States Naval ships and all but one of such listed ships are wholly government owned. That one non-government owned ship, the Shenandoah, is bareboat chartered by the United States as owner pro hac vice under a construction-charter-purchase financing agreement whereby charter hire may be treated as on account of payment of construction cost and purchase price so that it may ultimately be owned by the United States solely.

This Court has jurisdiction in admiralty over the subject matter of this action pursuant to the provisions of Title 46, United States Code, Section 742.

One of the departments of the city government of plaintiff is its Harbor Department placed under the management of a Board of Harbor Commissioners pursuant to California Statutes and the Charter of the City of Los Angeles. Such Board is responsible under state law for the management, supervision and control of the navigable waters within the Los Angeles City limits; such waters include the Los Angeles Harbor. By the City Charter the Board is vested with the power to fix, regulate and control piloting of all vessels in the Harbor as well as the power to fix, regulate and collect the rates for pilotage. The Board has pursuant to such power established a published tariff respecting rules, charges and rates for pilotage at the Port of Los Angeles (Los Angeles Harbor). The tariff provides that where a vessel is not piloted by a municipal pilot of plaintiff, three-fourths of the charge which would be due if the services of a municipal pilot were utilized is due to the City from the owner of such vessel; however, there are certain vessels not subject to pilotage tariff. As originally published in 1951, the tariff excepted all vessels of the United States of America government . . . ., without material qualification. However, during the period commencing December 31, 1968, and ending May 5, 1969, the only vessels of defendant excepted from the tariff were "combat and training vessels including vessels auxiliary thereto of the United States of America (except such vessels when manned by civilian crews) . . . ."; commencing May 5, 1969, and at all times to this date the only vessels of the United States of America excepted from the tariff are combat and training vessels of the United States of America. The vessels against which tariff is claimed in this action are all civilian manned.

The plaintiff has billed defendant for tariff charges claimed to be due against the vessels listed in the schedule attached to plaintiff's complaint, but payment has been refused by the United States on the ground that each vessel involved is a public vessel of the United States and therefore not subject to municipal pilotage charges unless a municipal pilot was in fact employed. The vessels involved are as stated operated under the direction of the Military Sea Transportation Service, the organization within the Department of Defense responsible for providing ocean transpor-

tation services for the Armed Forces and the National Defense of the United States.

Each of the vessels listed was engaged either in the transportation of military cargo or bulk petroleum products belonging to the Armed Forces or in the conduct of special governmental projects undertaken by the agencies of the United States.

The defendant has not utilized the pilotage services of plaintiff for the vessels here involved for the reason that the United States Navy has its own staff of pilots, civil service employees of the United States, based at the United States Naval Station near Los Angeles, and who are duly licensed and qualified to perform the service of piloting into, within, and out of the Port of Los Angeles; the Navy also has contracts with other qualified local pilot organizations to furnish pilotage services within the Port of Los Angeles for government ships when Navy pilots are not available to perform all of the pilotage services required by governmental ships. In fact, the United States Navy had a contract with, among others, the City of Los Angeles, but has not in recent years had occasion to order or require the services of the Los Angeles municipal pilots.

■ It is the opinion of this Court that the Supremacy Clause of the United States Constitution bars any relief to plaintiff herein.

■ The plaintiff contends that because of the language of Title 46, United States Code, Section 742, Congress has approved enactment of the tariff provisions upon which plaintiff relies. It is the opinion of this Court that plaintiff is confusing jurisdiction of the Court over the action with the question of whether or not plaintiff states a claim upon which it can obtain relief. The Court does by virtue of the Statute mentioned have jurisdiction to consider this admiralty claim of plaintiff; however, the ability to consider the admiralty claim against the United States does not

in itself mean that plaintiff's claim for recovery of damages should be or can be sustained.

From the time of the decision in M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) it has been established that under the Supremacy Clause of the United States Constitution, as stated by Chief Justice Marshall (17 U.S. 436), "the states have no power by taxation or otherwise to retard, impede, burden or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government."

■ It would seem a necessary corollary that the activities of the federal government in carrying out the operations of the United States Navy and its various departments are not subject to regulation or control by any local bodies including the City of Los Angeles. What the City of Los Angeles here attempts to do is to regulate and control the manner in which defendant shall carry on War or provide for the National Defense.

In Ayers v. Knox, 7 Mass. 306 (1811), it was held that pilotage regulations for Boston Harbor did not apply to public vessels of the Navy because of the adoption of the Constitution which vested Congress with the power to establish and regulate a Navy. The Attorney General of the United States, 4 Op. Atty.Gen. 532 (1846), stated that public vessels of the government have the right to enter ports and harbors of the United States without employment of pilots so that there can be no lawful charge for pilotage in cases where the services have not been required and rendered to the United States; and that such exemption extends to all vessels belonging to the United States employed in the public service whether they be armed ships or not.

■ The fact that the City of Los Angeles has the power to enact valid regulations concerning pilotage as to privately owned ships does not give the

City power to control pilotage as to publicly owned vessels of the United States.

■ A state Statute becomes unconstitutional when applied so as to impede or condition the operation of federal programs and policies. See Public Utilities Commission of California v. United States, 355 U.S. 534, 540–544, 78 S.Ct. 446, 2 L.Ed.2d 470; Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504.

In the latter cited case the Supreme Court held that the Florida inspection fee with respect to the enforcement of Florida fertilizer law could not be enforced against the United States. At page 445, 63 S.Ct. at page 1139 of *Mayo*, the Court stated . . . "the activities of the Federal Government are free from regulation by any state" and went on to say at page 447, 63 S.Ct. at page 1140 of such opinion that the requirement which would require the payment of inspection fees by the United States "is prohibited by the supremacy clause."

Here the ships involved are maintained for the performance of the business of the United States Navy. In exercise of its constitutional powers, Congress has provided for a Department of the Navy, 5 U.S.C. §§ 101–102, and authorized the heads of the Navy Department to prescribe departmental regulations for the performance of its business. 5 U.S.C. § 301. The Navy Department has set up the Military Sea Transportation Service under regulations emanating from the Department of Defense to perform the Navy's duties.

This Court is of the opinion that there are many decisions of the United States Supreme Court which militate against plaintiff's position and demand that defendant's motion for summary judgment be granted. Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231; Johnson v. Maryland, 254 U.S. 51, 55–57, 41 S.Ct. 16, 65 L.Ed. 126; Paul v. United States, 371 U.S. 245, 250–255, 261–263, 83 S.Ct. 426, 9 L. Ed.2d 292; Public Utilities Commission of California v. United States, *supra*;

Lockheed Air Terminal, Inc. v. City of Burbank, 457 F.2d 667, 675–676 (9th Cir. 1972).

■ ■ Apart from the rule that the Supremacy Clause of the United States Constitution denies any relief to plaintiff, it would seem that Title 46, United States Code, Section 213, prohibits any claim for recovery by plaintiff against defendant herein. The tariff provisions of the City of Los Angeles here involved exempt from the effect of the tariff combat and training vessels of the United States of America. Title 46, United States Code, Section 213, provides that no state shall adopt any regulations or provisions which shall make any discrimination in the rate of pilotage or half-pilotage . . . *against national vessels of the United States.* Here there is a discrimination by the City against the vessels of the Military Sea Transportation Service. Furthermore, by contract, the City of Los Angeles has agreed to furnish only such pilotage services as the United States might require and order from time to time. Such agreement would seem plainly to contemplate pilotage of Navy vessels only upon order of designated Navy commands.

It is this Court's opinion that the same principles of law apply to the Shenandoah, the ship bareboat chartered by the United States as owner pro hac vice before mentioned, as apply to all of the other vessels herein involved.

There are no material undisputed facts herein so that the case is a proper one for summary judgment. The motion of plaintiff for summary judgment should be denied and the motion of defendant for summary judgment should be granted.

The foregoing constitutes the summary of undisputed material facts and conclusions of law of the Court. It is this Court's opinion that if there is any dispute of fact it does not apply to any material fact governing upon the granting of defendant's motion for summary judgment.

The Court will make and enter a judgment consistent herewith. No judgment shall be entered until the Court has signed and filed its formal judgment.