

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

March 16, 1977

The Honorable John C. White          Opinion No. H-957
Commissioner
Texas Department of Agriculture      Re:  License and inspection
P. O. Box 12847                      fees under the Texas Egg Law.
Austin, Texas   78711

Dear Mr. White:

    You ask two questions about the Texas Egg Law, article
165-8, V.T.C.S., which you administer.  This statute provides
for the inspection, grading, and marketing of eggs and the
licensing of persons who sell or process eggs.  Your questions
concern the application of section 16-A, which imposes a three
cent inspection fee on each case of eggs at the first sale or
first use.  Section 16-A reads as follows:

> <u>In addition to the license fees
> hereunder the licensee which first
> establishes the grade</u>, size and class-
> ification of eggs sold or offered for sale
> in this state shall collect on their first
> sale of such eggs in this State an
> inspection fee of three ($.03) cents per
> case (thirty (30) dozen eggs) and all
> licensed processors in this state shall
> pay an inspection fee of three ($.03)
> cents per case (thirty (30) dozen eggs)
> upon their first use or change in form in
> eggs processed by them, such fees shall be
> remitted by all such licensees monthly in
> accordance with rules and regulations as
> promulgated by the commissioner, and all
> sums so collected shall be placed by him
> in the general revenue fund of the State of
> Texas.  (Emphasis added).

p. 3992

You ask whether persons required to obtain a license by sections 14 and 15 must also pay the inspection fee imposed by section 16-A.  With some exceptions, section 14 requires persons who buy or sell eggs for subsequent resale to first obtain a license from the Commissioner.

Section 15 requires each licensee to pay a license fee, except for retailers, defined as persons selling eggs to consumers.  Section 16 establishes a scale of license fees. We believe that the persons who are licensed under section 14 and pay license fees under section 15 must also pay the inspection fees required by 16-A.  Section 16-A plainly states that the inspection fees are exacted in addition to license fees and that licensees must remit inspection fees. The Department of Agriculture reads section 16-A as being based on sections 14 and 15, and thus agrees that licensees must pay both license fees and inspection fees.

In exercise of its police power authority, the State may exact license fees reasonable in amount.  See Berry v. McDonald, 123 S.W.2d 388 (Tex. Civ. App. -- San Antonio 1938, no writ); Parrish v. Wright, 293 S.W. 659 (Tex. Civ. App. -- Amarillo 1927, writ ref'd).  A Texas court has approved the imposition of both a license fee and an "additional registration fee" on the taxpayer's vehicles, where the fees were authorized by two different statutes.  Lowery v. English, 299 S.W. 478 (Tex. Civ. App. -- Eastland 1927, writ ref'd). We do not believe the fact that the inspection fee is additional to the license fee and imposed under a different section of the statute impairs its validity.  We reiterate our conclusion that persons licensed under sections 14 and 15 must pay the section 16-A inspection fees.

You also ask whether a licensee who first establishes the grade, size, and classification is required to pay the section 16-A inspection fee on eggs sold to the military. In a long line of cases beginning with McCulloch v. Maryland, 4 Wheat 316, 4 L.Ed. 579 (1819), the Supreme Court has held that the federal government and its instrumentalities are constitutionally immune from state taxes.  United States v. State Tax Commission of Mississippi, 421 U.S. 599 (1975). Military installations, post exchanges, and officer's clubs are instrumentalities of the federal government.  Id.

The federal government is also immune from inspection fees imposed upon it without its consent. Mayo v. United States, 319 U.S. 441 (1943); Attorney General Opinion O-4617 (1942). See also City of Los Angeles v. United States, 355 F. Supp. 461 (C.D. Cal. 1972). In fact, the inspection fee, as an "enforced contribution to provide for the support of government," fits the definition of tax recently adopted by the Supreme Court in a federal tax immunity case. United States v. State Tax Commission of Mississippi, supra at 606.

The federal immunity from state taxation extends to a state tax whose legal incidence falls upon the federal government. United States v. State Tax Commission of Mississippi, supra. Annot., State Sales or Use Tax as Violating Immunity of United States -- Supreme Court Cases, 44 L.Ed. 2d 719. The fact that the economic burden of the tax may be passed on to the United States does not by itself invalidate the tax. See Alabama v. King & Boozer, 314 U.S. 1 (1941). When, however, state law requires that the sales tax be passed on to the purchaser and collected from him, the legal incidence is on the purchaser as a matter of law. United States v. State Tax Commission of Mississippi, supra; see Attorney General Opinion H-380 (1974).

Section 16-A of article 165-8 states that "[i]n addition to the license fees hereunder the licensee . . . shall collect on their first sale of such eggs . . . an inspection fee. . . ." (Emphasis added). The legislative intent with respect to the incidence of the inspection fee is somewhat unclear. The statute states that the licensee shall collect it on the first sale, but also classes it with the license fee, which the licensee pays. Rules promulgated under the Texas Egg Law seem to place the incidence of the inspection fee on the licensee who first establishes the grade of eggs. See Rules and Regulations -- Texas Egg Law VII (A)(b),(c). However, the United States Supreme Court may itself determine the meaning of a state statute upon which the resolution of a federal constitutional issue rests. United States v. State Tax Commission of Mississippi, supra.

We believe that if the Supreme Court were to consider section 16-A, it would probably focus on the words "shall collect" and conclude that the incidence of the tax falls on the purchaser.  See Gurley v. Rhoden, 421 U.S. 200, 205 (1975) and Kern-Limerick Inc. v. Scurlock, 347 U.S. 110 (1954).  The fee therefore cannot constitutionally be applied to federal purchasers, and licensees need not remit the inspection fee on sales to military purchasers.  See Attorney General Opinion H-380 (1974).

### S U M M A R Y

Persons licensed under the Texas Egg Law who first establish the grade, size and classification of eggs sold in Texas must pay an inspection fee on their sales of such eggs.  Licensees need not pay the inspection fee on eggs sold to the military in Texas.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb