Hon. Damaso **SERRANO LOPEZ**,
et al., Plaintiffs,

v.

Gregory **COOPER**, et al., Defendants.

Civ. No. 02–1460 (PG).

United States District Court,
D. Puerto Rico.

April 4, 2002.

Hiram Lozada-Perez, Hato Rey, for Plaintiff.

Isabel Munoz-Acosta, U.S. Atty's Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

### I. INTRODUCTION

Before the Court is a "Motion to Dismiss and Memorandum of Law in Support of Motion to Dismiss and Opposition to Request for Injunctive Relief" ("Mot. to Dismiss") (Docket No. 5) filed on April 1, 2002. The complaint in this case was originally filed in the Court of First Instance of the Commonwealth of Puerto Rico, Fajardo Part, on Thursday, March 21, 2002. It was removed to this Court on Tuesday, March 26, 2002 pursuant to 28 U.S.C. §§ 1441, 1442 and 1442(a) (See Docket No. 1). Plaintiffs bring this lawsuit against 1) Gregory Cooper in his official capacity as Commanding Officer of the Atlantic Fleet Weapons Training Facility of the United States Navy; 2) Gordon England, Secretary of the United States Navy; 3) Donald Rumsfeld, Secretary of the United States Department of Defense; 4) Kevin Green, Rear–Admiral of the United States Navy; and 5) several unnamed defendants. In their complaint, Plaintiffs request preliminary and permanent injunctions under the laws of the Commonwealth of Puerto Rico to forestall naval training and activities on the island of Vieques.

On March 27, 2002 this Court dismissed all but one of the Plaintiffs from this lawsuit for lack of standing. (Docket No. 3). Therefore, the only remaining Plaintiff is Hon. Dámaso Serrano–López, Mayor of the municipality of Vieques. For the reasons stated below this Court **GRANTS** Defendants' Motion to Dismiss, and therefore, **DENIES** Plaintiff's request for a preliminary and permanent injunction.

In summary, the Court finds that the factors to be considered pursuant to a request for injunctive relief weigh against granting such relief in this case. Moreover, several procedural faults in Plaintiff's complaint weigh in favor of dismissing it. First and foremost, there has been no waiver of sovereign immunity and therefore, the court does not have subject matter jurisdiction to hear this case. Second, the act which forms the basis of Plaintiff's complaint, the Coastal Zone Management Act ("CZMA"), codified as amended at 16 U.S.C. §§ 1451–1465 (1972), does not provide him with a direct cause of action to bring this lawsuit. Third, even if we assume arguendo, that Plaintiff could and is bringing this action under the Administrative Procedure Act ("APA"), codified as amended at 5 U.S.C. §§ 551–559, 701–706 (1994), Plaintiff still lacks standing to bring this lawsuit. Finally, the Court also finds that Defendants have complied with the requirements of the CZMA and that the alleged violations of Plaintiff's constitutional rights are not traceable to and will not result from Defendants' activities.

### II. FACTUAL BACKGROUND

#### A. THE RELEVANT MILITARY EXERCISES

Beginning on April 1, 2002 the Navy plans to conduct a Composite Training Unit Exercise ("COMPTUEX") which is expected to run for a period of three weeks. (See Mot. to Dismiss, Ex. I, Declaration of Captain Michael Vitale, Chief of Staff for Commander, Carrier Group FOUR). Other Multiple Unit Level Training ("ULT") activities will also take place at the Vieques Inner Range. Some of

these exercises are being conducted in an effort to prepare USS GEORGE WASH- INGTON (CVN 73) Aircraft Carrier Battle Group for an upcoming assignment over- seas in which it will join other Groups from the Atlantic Fleet in their intensive combat operations against terrorism. (*See* Mot. to Dismiss, Ex. II, Declaration of Admiral Lidnell G. Rutherford, ¶ 9). The training exercises in Vieques will involve different scenarios and activities including: 1) air- to-ground bombing, 2) Naval Surface Fire Support, 3) Close Air Support strikes, Combat Search and Rescue, 4) and Naval Special Warfare unit level training. (*See* Mot. to Dismiss, Ex. I).

## B. THE VIEQUES REFERENDUM

On July 29, 2001 the residents of the island of Vieques went to the polls to cast their vote in a referendum held on whether the Navy should be allowed to continue their military training exercises on the is- land. The majority voted against the Navy continuing its operations in Vieques. This referendum took place pursuant to a bill signed on June 13, 2001 by Hon. Sila María Calderón, Governor of the Common- wealth of Puerto Rico. *See* 2001 P.R. Laws 34. ("Law 34").

Plaintiff requests relief for the Navy's failure to observe the majority vote in this referendum. However, nothing in Plain- tiff's complaint would support his proposal that this referendum is binding on either the Government of the Commonwealth of Puerto Rico or the United States. Neither is there any support in the law itself for this proposition. In fact, the only effect of the law is set out in its Statement of Motives wherein it says that "[i]n the event that the majority of voters choose the option that asks for the immediate and permanent cessation of the Navy's military exercises and bombarding in Vieques, the population of Vieques will be clearly ex- pressing their democratic will and their desire for the permanent cease of any kind of military training in the municipality." (*See* Statement of Motives of Law 34) (translation ours). Like the title of the law suggests,[1] the referendum was simply an "electoral consultation" to the people of Vieques regarding their views about the presence of the Navy in the island.

In making reference to another ref- erendum where the residents of Puerto Rico were asked to express their views with regards to the political status of the Commonwealth, this Court stated that "[it was] mindful that any referendum, such as this one, is not binding on Congress." *Popular Democratic Party v. Common- wealth of Puerto Rico*, 24 F.Supp.2d 184, 195 (D.P.R.1998); *see also New Progres- sive Party v. Colon*, 779 F.Supp. 646, 662 (D.P.R.1991). Ultimately, the Supremacy Clause of the United States Constitution forbids us from embracing Plaintiff's sug- gestion that the Navy is obliged to cease operations in Vieques pursuant to the re- sults of the July 2001 referendum. *See United States v. Chester*, 144 F.2d 415, 419–20 (3rd Cir.1944) (the exemption of the federal government from state and local zoning laws stems from the Suprema- cy Clause). A referendum cannot halt the Navy's endeavor to fulfill their duties un- der the United States Code which entail the military practices in Vieques scheduled for this month. As Defendants correctly point out, "[a] state statute, a local enact- ment or regulation or a city ordinance, even if based on the valid police powers of a state, must yield in case of direct conflict with the exercise by the government of the United States of any power it possesses

---

**1.** The full title of Law 34 in Spanish is "Ley para ordenar una consulta electoral en Vie- ques."

under the Constitution." *Pan American Health Organization v. Montgomery County, Md.*, 889 F.Supp. 234, 238–39 (D.Md.1994).

Therefore, even if we found Law 34 was intended to somehow be binding, we here find it cannot be binding on Congress or the Navy under the Supremacy Clause of the U.S. Constitution. Additionally, any intended effects of the results of the referendum must surrender against the "operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." *City of Los Angeles v. United States*, 355 F.Supp. 461, 464 (C.D.Cal.1972). For these reasons we find that any claims Plaintiff is making on the basis of the Navy's or the United States' failure to observe and abide by the wishes of majority of voters in the July 29, 2001 referendum are without merit. Equitable relief on this basis is hereby **DENIED.**

### C. THE COASTAL ZONE MANAGEMENT ACT

Plaintiff's causes of action are brought under the Constitution of the Commonwealth of Puerto Rico and the CZMA. The CZMA is a "federal law administered by the National Oceanographic and Atmospheric Administration [ ('NOOA') ], which, in turn, has delegated some authority for administration to the States." *United States v. San Juan Bay Marina*, 239 F.3d 400, 404 (1st Cir.2001). Puerto Rico is considered a state for these purposes. *Id.*

The general purpose behind the enactment of the CZMA was for the federal government to assist coastal states in effectively exercising their management responsibilities in an effort to preserve, protect, and develop the nation's coastal zone. 16 U.S.C. § 1452. States are responsible for developing a Coastal Management Plan ("CMP") and the NOAA decides whether to approve each state's CMP. A designated local agency which serves as liaison between the NOAA and the state is responsible for developing the CMP. In Puerto Rico this agency is the Puerto Rico Planning Board ("Junta de Planificación Ambiental") ("PRPB") and they have had a NOAA approved CMP since 1978. In return for carrying out the management programs of their coastal zones, states are eligible for federal grants as determined by the Secretary of Commerce. States also gain the right to influence activities carried out by federal agencies that might affect a coastal zone or its resources. The Act requires that all federal agencies carry out their activities "in a manner which is consistent to the maximum extent practicable with the enforceable policies of approved State management programs." 16 U.S.C. § 1456(C)(1)(A).

Part 930 of the Code of Federal Regulations sets out the procedural framework for implementing the CZMA and achieving federal consistency with approved coastal management programs. If a federal agency foresees it will engage in activities that will affect any coastal use or resource, it must develop and submit a consistency determination to the state agency, the PRPB in Puerto Rico, with "sufficient information to reasonably determine the consistency of the activity" with the local CMP. 15 C.F.R. § 930.34(A)(1) & 930.36(B)(1) Note (2001). Ultimately, it is the federal agency which determines whether its activity affects the coastal zone and whether it will be acting consistent to the maximum extent practicable with the local CMP. 15 C.F.R. § 930.32(A); § 930.33, § 930.34(A), § 930.43(D)(1) & (2) & § 930.43(E) Note (2001). States, nevertheless, can object to a federal agency's determinations. 15 C.F.R. § 930.43 Note (2001). In objecting to the federal agency's consistency determination report, the state must identify the enforceable policies it believes the agency's activities are incon-

sistent with, and also explain how the proposed activity is inconsistent with the those policies and the CMP. *Id.* The state should also describe the alternative measures that would allow the activity to proceed in a manner consistent with the CMP to the maximum extent practicable. *Id.* If the state and the federal agency still disagree as to the consistency of the activities with the CMP, mediation services through the Secretary of Commerce are available. 15 C.F.R. § 930.44 Note (2001).

### D. CONSISTENCY DETERMINATION

On October 15, 2001 the Navy submitted an Application for Certification of Consistency with the Puerto Rico Coastal Management Program ("Application for Certification of Consistency") to the PRPB to continue its military training and exercises up and until May 1, 2003. (*See* Mot. to Dismiss, Ex. III). The PRPB was required to review such application within a sixty (60) day period which, due to their own request for resubmission of the application, began to run on October 17, 2001. (*See* Mot. to Dismiss, Ex. IV). On December 13, 2001 the PRPB rejected the application as inconsistent with the Puerto Rico CMP, including in its rejection letter commentaries and recommendations from agencies, organizations, and other "points of contact" that had been consulted about the application. (*See* Mot. to Dismiss, Ex. V). The letter also outlined PRPB's own conclusions upon reviewing the application, and the pertinent legal provisions of the PRPB's Objectives and Public Policies of the Land Use Plan of Puerto Rico ("PRPB's Objectives and Public Policies").[2]

Several other correspondence was exchanged between the Navy and the PRPB during the months of December and January. Plaintiff claims that on December 21, 2001 the President of the PRPB informed the Navy that it had failed to comply with several requirements of the Application for Certification of Consistency such as preparing a declaration of the complete environmental impact of the exercises, obtaining authorization form the Department of Natural Resources, preparing a declaration of compliance with the local environmental laws, and conducting certain archeological studies. The record does not indicate or provide evidentiary support of how this communication took place.

Plaintiff alleges that mediation between the Navy and PRPB should have begun on February 5, 2002 ninety (90) days after submission of the application. It is unclear how these dates and numbers were calculated[3] but in any event, on February 22, 2002, the Navy wrote PRPB explaining that it had failed to properly object to the Application for Certification of Consistency and that moreover, the Navy's actions were consistent with policies enforceable against them, or at least, "consistent to the maximum extent practicable" as required under the CZMA, 16 U.S.C. § 1456(c)(1), and under NOAA regulations, 15 C.F.R. § 930.112 Note (2001). (*See* Mot. to Dismiss, Ex. VIII). The Navy also expressed its concurrence with PRPB's suggestion, in a letter dated January 4, 2002 (*See* Mot. to Dismiss Ex. VII), of making an attempt to settle the remaining issues, preferably prior to the commencement of the next train-

---

**2.** We note that nowhere in the record is it suggested that the PRPB's Objectives and Public Policies are part of the "enforceable policies of approved State management programs" with which the federal activities must be consistent under the CZMA. (*See* 16 U.S.C. § 1456(c)(1)(A)). *See also* Section VI.E. below.

**3.** Apparently the PRPB did not consider the application submitted until November 5, 2001, because they claim it was improperly submitted in October 2001 and they had to ask for resubmission. (*See* Mot. to Dismiss Ex. VII).

ing exercises in Vieques. Plaintiff alleges, again without providing any evidentiary support for this allegation on the record, that on March 15, 2002 the Navy officially announced its intention to conduct the April 2002 training exercises in Vieques.

Two more letters were sent by PRPB on March 19, 2002 one to the Secretary of Commerce requesting mediation and the other to the addressed to the Navy requesting a meeting prior to the commencement of the April 1, 2002 training exercises. (*See* Mot. to Dismiss Ex. IX and Ex. X).

Finally, five (5) days after the complaint in this case was filed in local court, the Navy wrote PRPB a letter on March 26, 2002 indicating their desire to resolve their issues via informal negotiations and proposing therein a meeting during the week of April 8, 2002. (*See* Mot. to Dismiss Ex. XI). In this letter, the Navy emphasized PRPB's continued failure to properly set out their objections and identify the enforceable policies which the Navy was not in compliance with. The Navy claims this last letter fulfilled the notice requirements under 15 C.F.R. § 930.43(e) Note (2001), of their intentions to proceed with the upcoming exercises.

### III. SUMMARY OF ARGUMENTS

The essence of Plaintiff's complaint is that the Navy failed to comply with its duty under the CZMA to provide a consistency determination to PRPB that this agency approved of, and carry out its activities in a manner "consistent to the maximum extent practicable with the enforceable policies of approved State management programs." 16 U.S.C. § 1456(c)(1)(A). Moreover, Plaintiff argues that the Navy's training exercises will be conducted in complete disregard of the July 29, 2001 referendum where the people of Vieques expressed their views as to whether they wanted the Navy to cease the military exercises on the island.

In its Motion to Dismiss, the Navy argues that: 1) the local referendum held on July 29, 2001 is not binding and therefore, Plaintiff has no basis whatsoever to claim relief as a result of the Navy's failure to abide by it; 2) there being no waiver of sovereign immunity, Plaintiff has failed to establish subject matter jurisdiction; 3) there being no direct cause of action under the CZMA, the Act under which Plaintiff brings this lawsuit, he lacks standing; 4) that even if the Court were to find it had subject matter jurisdiction and Plaintiff had standing, the Navy as a federal agency has complied with its duties under CZMA and therefore, Plaintiff has failed to state a claim for which equitable relief in the form of preliminary and permanent injunctions can be granted.

### IV. STANDARD OF REVIEW OF A PRELIMINARY INJUNCTION

The standard for preliminary injunction is well settled.

> [T]rial courts must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996) (cited in *Pharmaceutical Research and Mfrs. of America v. Concannon,* 249 F.3d 66, 2001 WL 505645 (1st Cir.2001)).

We will begin by examining the likelihood of success on the merits of Plaintiff's claims by in turn reviewing Defendants' Motion to Dismiss.

## IV. STANDARD OF REVIEW OF A MOTION TO DISMISS

When ruling on a 12(b)(6) motion a court must accept all well-pled factual averments as true and must draw all reasonable inferences in the plaintiffs' favor. *Berezin v. Regency Savings Bank*, 234 F.3d 68, 70 (1st Cir.2000); *Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir. 1994). A Court should not dismiss a complaint for failure to state a claim or for lack of subject matter jurisdiction unless it is clear that plaintiff will be unable to recover under any viable theory. *See LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir.1998); *Negron–Gaztambide*, 35 F.3d at 27; *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir.1994); *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992). However, a court will not accept plaintiff's "unsupported conclusions or interpretations of law". *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir. 1993).

A sovereign immunity defense should be brought under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. *Murphy v. United States*, 45 F.3d 520 (1st Cir.1995). In reviewing a 12(b)(1) motion to dismiss, the Court should "construe the complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995). "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Id.* (quoting *Taber Partners I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir.), *cert. denied* 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993)).

Moreover, the First Circuit has stated that "a complaint must set forth a factual allegation either direct or inferential respecting each element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997); *see also O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir.1976), *cert. denied* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223(1977).("[w]hen a complaint omits facts that, if they existed, clearly would dominate the case, it is fair to assume that those facts do not exist."); *Roth v. United States*, 952 F.2d 611, 613 (1st Cir.1991) (stating that in his complaint a plaintiff is obliged to allege facts regarding each essential element necessary to entitle him to recovery under an actionable legal theory); *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996) (the court is not obliged to accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like.").

## VI. DISCUSSION

### A. SUBJECT MATTER JURISDICTION and WAIVER OF SOVEREIGN IMMUNITY

 Under the doctrine of sovereign immunity the federal government cannot be sued by private parties, states and/or their agencies unless the United States has expressly consented to be sued. *See Block v. North Dakota*, 461 U.S. 273, 280, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Misra v. Smithsonian Astrophysical Observatory*, 248 F.3d 37, 39 (1st Cir.2001). In any suit filed in federal court against the United States, there must be both a waiver of sovereign immunity and accordingly, subject matter jurisdiction. *Commonwealth of Puerto Rico v. Rumsfeld*, 180 F.Supp.2d 145, 150 n. 11 (D.D.C.2002); *FDCI v. Meyer*, 510 U.S. 471, 484, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). In these cases, the plaintiff bears the burden of

proving that subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Puerto Rico Tel. v. Telecom. Regulatory Bd.,* 189 F.3d 1, 7 (1st Cir.1999).

 Plaintiff has not alleged and the Court has no reason to believe that the United States has waived sovereign immunity in this case. The CZMA does not waive the sovereign immunity of the United States by creating a cause of action. *N.J. Dep't of Envtl. Prot. & Energy v. Long Island Power Auth.,* 30 F.3d 403, 421 (3rd Cir.1994); *Cal. v. Watt,* 683 F.2d 1253, 1270–71 (9th Cir.1982), *rev'd on other grounds,* 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984). Therefore, Plaintiff's suit has three major procedural faults: 1) lack of waiver of sovereign immunity; 2) lack of subject matter jurisdiction; and 3) the lack of a cause of action under which to argue its claims. To defeat these shortcomings, Plaintiff's only recourse to preserve these claims would be the Administrative Procedure Act or APA.

### B. DIRECT CAUSE OF ACTION and THE "APA"

The APA waives the sovereign immunity of the United States for non-monetary suits against federal agencies under specified conditions. 5 U.S.C. § 702. Section 10(a) of the Act states in part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

The APA is the sole avenue for actions challenging the legality of federal agency action where the federal law that is allegedly being violated, in this case the CZMA, does not confer a private right of action. *Clouser v. Espy,* 42 F.3d 1522, 1528 n. 5 (9th Cir.), *cert. denied,* 515 U.S. 1141, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995); *see also Hoefler v. Babbitt,* 139 F.3d 726 (9th Cir.), *cert. denied,* 525 U.S. 825, 119 S.Ct. 70, 142 L.Ed.2d 55 (1998). It is therefore, the only basis for this Court to inquire into whether the Navy's actions are in compliance with CZMA requirements. *Long Island Power Auth.,* 30 F.3d at 421. Therefore, the *only* avenue which Plaintiff *could* potentially use to bring this lawsuit would be the APA. Assuming arguendo that he had, we proceed to consider the viability of his causes of action under the APA.

 Defendants suggest that Plaintiff Serrano–López lacks standing to bring suit under the CZMA via the APA. A prudential standing requirement is imposed by the APA "in addition to the requirement, imposed by Article III of the Constitution, that a plaintiff have suffered a sufficient injury in fact." *National Credit Union Admin. v. First Nat. Bank & Trust Co.,* 522 U.S. 479, 488, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). "For plaintiff to have prudential standing under [the] judicial review provision of the Administrative Procedure Act (APA), [the] interest that plaintiff seeks to protect must be arguably within zone of interests to be protected or regulated by statute in question." *Id.; see also* 5 U.S.C. § 702.

As the Ninth Circuit has suggested, "[t]o have standing under this section both of the following questions must be answered affirmatively:

1. Has the party seeking standing suffered a legal wrong, or been adversely affected or aggrieved by the agency action (i.e., has he been 'injured in fact'), and

2. Are the interests sought to be protected by the party seeking standing 'arguably within the zone of interests to be protected or regulated' by the statute in question."

■ *See Cal. v. Watt,* 683 F.2d at 1270; *see also Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 151–153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).[4]

Defendants suggests that Plaintiff Serrano–López lacks standing because the injuries he alleges are not within the zone of interests to be protected by the CZMA, as defined in the Act's statement of purposes. (*See* 16 U.S.C. § 1452). In order for the Court to make a determination on the issue of standing, we must examine Plaintiff's alleged injuries.

## C. PLAINTIFF'S ALLEGED IRREPARABLE HARM

The only remaining Plaintiff in this case, Hon. Dámaso Serrano–López, alleges that if the training exercises take place, the people of Vieques will suffer irreparable harm through: 1) water poisoning and contamination; 2) destruction of archeological deposits; 3) destruction of animal life in the coastal zone; 4) disturbance of eco-logical systems such as reefs and algae; 5) serious illnesses in the population; and according to Plaintiff, most significantly 6) the cumulative effects of more than 60 years of usage.

Plaintiff Serrano–López also claims that the Navy's actions are in violation of the Constitution of the Commonwealth of Puerto Rico and will result in the following injuries to the people of Vieques, *inter alia:* 1) the deterioration of their constitutional function; 2) a violation of their freedom of association; and 3) a hindrance on their right to redress their grievances.[5] (Compl.¶ 31). He claims the Defendants' neglect of the July 29, 2001, referendum along with their neglect of their duty to obtain a permit prior to undertaking the challenged actions on April 1, 2002, will bring about these injuries. *Id.*

## D. STANDING

■ In dismissing the remaining Plaintiffs in this action for lack of standing, the Court refrained from making a finding as to Plaintiff Serrano–López's fulfillment of the general standing requirements. A review of the complaint revealed that if any of the Plaintiffs in this case had standing, it could only be the Hon. Dámaso Serrano–López on behalf of the people of Vieques. Upon reviewing the Defendants' arguments for dismissal however, we have ascertained that Plaintiff Serrano–López also lacks standing to bring this action given

4. As stated in this Court's Opinion and Order dated March 27, 2002, to satisfy the general standing requirements a plaintiff must show that: (1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (*quoting Lujan v. Defenders of*

*Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). We find that because there are more specific standing requirements under the APA, which is the only avenue Plaintiff could have used to bring this lawsuit against Defendants, there is no need to make the standing inquiry under these general requirements.

5. Since Plaintiff Serrano–López brings this suit on his behalf and on behalf of the people of Vieques, the enumerated claimed injuries are set forth in the plural.

the standing requirements applicable to the APA.

As regards the first set of alleged injuries, the potential environmental harm, we find Plaintiff does not have standing to bring this action. The injuries he maintains the people of Vieques will endure do not result from the alleged CZMA violations and are not protected under the CZMA either. Plaintiff sues under the CZMA for harm or injuries that CZMA seeks to protect *only* to the extent that the Act requires federal agencies, such as the Navy, to be "consistent to the maximum extent practicable" with the Puerto Rico CMP. The zone of interests regulated by the CZMA includes a state's protection of their coastal zones and not an individual's attempt to seek further protection once the CZMA requirements have been complied with. (*See* Section VI.E below). The only party that could potentially bring its concerns, interest, and potential injuries within the zone of interests of the CZMA under these particular circumstances is the PRPB, by further contesting the Navy's consistency determination. Ultimately, as Defendants correctly suggest, no provision is made in the CZMA or Part 930 of the CFR for private or local entities and individuals to substitute their own interests and judgments for that of the reviewing state agency.

As regards the second set of injuries arising out of Plaintiff's rights under the Constitution of the Commonwealth of Puerto Rico, we find these are not "injuries in fact" that could result from the Navy's action and Plaintiff has not been and will not be adversely affected or aggrieved by those actions. Plaintiff gives the Court no support for his contention that the Navy's actions would result in a deterioration of the people of Vieques' constitutional rights, a violation of their freedom of association, and a hindrance on their right to redress their grievances.

Neither can we can find any in the factual allegations made in the complaint. In addition to Plaintiff's failure to square this second set of injuries within the first prong of the APA's standing requirements, Plaintiff also fails to show how these fit within the zone of interests of CZMA. We reiterate that even though Plaintiff alleges these are violations of *constitutional* rights, he maintains that these injuries would result from the Navy's failure to comply with CZMA requirements and its failure to abide by the results of the referendum. However, there is no connection between the interests the CZMA intended to protect and the "irreparable harm" this second set of injuries constitute. (*See* Section II.C. above). Therefore, we find that Plaintiff fails to fulfill the APA standing requirements to bring these claims alleging violations of the constitutional rights of the people of Vieques. (*See* Compl. ¶ 31).

### E. THE NAVY COMPLIED WITH THE CZMA

During the last two years the public debate over the effects of the Navy's military exercises on Vieques as a whole has rocketed and the United States Navy as well as the United States have responded to the best of their ability and in a most reasonable manner to the concerns of the people of Puerto Rico and the people of Vieques. They have made an effort to address the voiced concerns specially, environmental and humanitarian concerns.

The CZMA and the applicable provisions of the Code of Federal Regulations allow a federal agency to proceed with its planned activities even after a state has objected to them if the federal agency determined that it cannot comply any further with the state's demands, and provides the state with an explanation to that effect and with a notification of its intention to proceed with the activities.

The Navy complied with all of its duties under the CZMA as evidenced in its continued communications with the PRPB during the last six (6) months. The standard for compliance with the CZMA is clear: "consistent [with the CMP] to the maximum extent practicable." The Navy clearly has made all efforts to reach that maximum level and PRPB has not voiced its concerns to the contrary. PRPB does hold the view that the Navy's Application for Certification was deficient but they are not the ones bringing this lawsuit to claim that the CZMA standard has been violated. As Defendants repeatedly suggest in their Motion to Dismiss, if anyone should be contesting the Navy's adherence to that standard, it is the PRPB in representation of the Commonwealth of Puerto Rico. In this case, the PRPB made a deficient attempt to contest the Navy's consistency determination and has not engaged in any further attempts to contest that determination as for instance, by joining Plaintiff in this lawsuit. In rejecting the Application for Certification of Consistency, the PRPB objects on the basis of the Navy's failure to comply with PRPB's policies that have not been made part of the CMP approved by the NOOA. Therefore, these are not valid objections.

The CZMA, and the implementation framework for it found in the Code of Federal Regulations, clearly set out that challenges to consistency determinations submitted by federal agencies shall be made by the state agency enforcing the CMP locally. The federal agency, in our case the Navy, has to answer only to the PRPB's concerns and thereon, conduct its activities in a manner as consistent as possible with the CMP.

### F. INJUNCTION

For all these reasons, we find that Plaintiff is not likely to succeed on the merits of his claim of violations of the CZMA by the Navy, neither are they likely to succeed on the merits of his claim for Defendant's failure to conform their actions with the vote of the people of Vieques. The second requirement for issuance of a preliminary injunction is that we find a cognizable threat of irreparable harm. As we have suggested above, we do not find such threat, either to Plaintiff's interests in not being harm by alleged environmental damage to result from the Navy's action much less to Plaintiff's constitutional rights. We also find that the third factor, the balance of relevant impositions, unquestionably weighs against granting injunctive relief. As has been suggested above, we find that the threat of irreparable harm with regards to the alleged constitutional violations is non-existent, and moreover, the threat of environmental harm that the residents of Vieques would allegedly suffer is slim so that the potential hardship to the Plaintiffs if no injunction issues is minimal compared with the hardship to the Navy and its participation in this nation's recently escalating crusade against terrorism.

As suggested by Defendants, the Navy, now more than ever, has a duty to train its forces to be ready for conducting warfare at sea. See 10 U.S.C. § 5062. In achieving this through its practices in Vieques, the Navy has complied to the maximum extent practicable with Puerto Rico's CMP. (See Mot. to Dismiss, Ex. XII). Requiring the Navy to further constrain its practices in Vieques has the potential of interfering with its duty to train its forces under the United States Code. (See Mot. to Dismiss Ex. VIII). On the other hand, Plaintiff provides no factual or legal basis for the injuries he claims he will sustain as a consequence of the Navy's failure to comply with CZMA's requirements.

Finally, we find that if this Court's decision will have any effect in the public interest, it will indisputably be a beneficial

one. In his complaint, Plaintiff threatens to call for an uprise of civil disobedience among the people of Vieques if this Court allows the Navy to commence the exercises without complying with the CZMA. (*See* Compl. ¶ 32). The public interest will hopefully benefit by recognizing, even if reluctantly, the reality of the current situation in Vieques. The Navy is obligated and has a statutory duty to train its forces and prepare for conducting warfare at sea, while also abiding by the laws of the United States as well as those of the Commonwealth of Puerto Rico.

## VII. CONCLUSION

We find that the remaining Plaintiff in this case has not fulfilled the requirements for grant of a preliminary or permanent injunction. Defendants have also shown that this Court lacks subject matter jurisdiction to hear this case and that even assuming the Court had jurisdiction, the Plaintiff lacks standing. Finally, the Court finds the Navy has in fact complied with the CZMA, and as such, Plaintiff has failed to state a claim for which relief can be granted. For all the reasons stated above, the request for equitable relief is **DENIED** and Defendants' Motion to Dismiss is **GRANTED.**

**SO ORDERED.**